THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**CASE NO:  9:17-cv-80152-XXXX**

_____

THOMPSON, CHERISH, a Florida Resident and
MALKEMUS, CHARLES, a Colorado Resident

                     Plaintiffs,

v.

NAVIENT CORPORATION, a Delaware Corporation; and
NAVIENT SOLUTIONS, INC., a Delaware Corporation,

                     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiffs, Cherish Thompson, a Florida resident ("Thompson") and Charles Malkemus, a Colorado resident ("Malkemus or collectively with Thompson, "Co-Applicants"), by their undersigned counsel, for their complaint against defendants Navient Corporation, a Delaware Corporation ("Navient") and Navient Solutions, Inc., a Delaware Corporation ("NSI" or collectively with Navient, "Defendants"), allege as follows:

### Summary of the Action

      1.    This is an action for declaratory relief and for damages where Defendants wrongfully reinstated two satisfied notes pertaining to student loans with Sallie Mae and wrongfully reported those student loans and other satisfied, extinguished, and closed loans to the credit reporting agencies as open and outstanding to wrongfully pursue collection efforts against the Plaintiffs.

1

**Subject Matter Jurisdiction and Venue**

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1332(a), and 1367(a).

3.      Venue is proper before this Court because Defendants are found and/or transact business in this judicial district and pursuant to 28 U.S.C. §1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**Parties and Personal Jurisdiction**

4.      Plaintiff Thompson is a citizen of the State of Florida, subject to the personal jurisdiction of this Court because she resides in the jurisdiction of the Southern District of Florida.

5.      Plaintiff Malkemus is subject to the personal jurisdiction of this Court because he engaged in business in the jurisdiction of the Southern District of Florida, which business transaction is the subject of this action.

6.      Navient is subject to the personal jurisdiction of this Court because it regularly conducts business in this District, including the pursuit of collection efforts against Plaintiff-Thompson.

7.      NSI is subject to the personal jurisdiction of this Court because it regularly conducts business in this District, including the pursuit of collection efforts against Plaintiff-Thompson.

8.      Navient is a publicly-traded Delaware corporation, trading on the NASDAQ stock exchange under ticker symbol "NAVI."  Navient's principal place of business is in Wilmington, Delaware.  Navient may be served though its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

9.      NSI, formerly known as Sallie Mae, Inc., is a Delaware corporation with its principal place of business in Reston, Virginia.  NSI may be served though its registered agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

10.      There has been significant overlap between the corporate governance and management of Navient and NSI.  Specifically, many of the directors and officers of NSI have also been directors or officers of Navient.  For example, as of 2014, Navient and NSI share the same President and Chief Executive Officer; the same Chief Operating Officer; the same Chief Financial Officer; the same Chief Risk Officer; and the same Senior Vice President and Treasurer.

11.      Following a corporate reorganization in 2014, Navient, upon information and belief, was the successor to SLM Corporation and Navient, LLC.  As part of this reorganization, upon information and belief, Navient assumed all the loans of SLM Corporation, Navient, LLC, and their subsidiaries that predated 2014.  Among the loans allegedly assumed by Navient and/or NSI are the loans that are the subject of this Complaint.

12.      Navient is the largest student loan servicer in the United States. Navient services the loans of more than 12 million borrowers, including over 6 million customer accounts under a contract with the U.S. Department of Education, and more than $300 billion in federal and private student loans.

13.      Navient's principal responsibilities as a servicer include managing loan accounts; processing payments; and communicating directly with account holders about their loans.

14.      In public statements, including annual 10-K filings with the U.S. Securities and Exchange Commission, Navient (including its predecessor SLM Corporation) has boasted about its capabilities with respect to student loan servicing and collection.  Navient has also indicated

that it is responsible for overseeing the strategic direction and business goals of its subsidiaries.

For instance, Navient's 2015 10-K filing includes the following statements:

> (a) "Navient is the nation's leading loan management, servicing and asset recovery company, committed to helping customers navigate the path to financial success. Servicing more than $300 billion in education loans, Navient supports the educational and economic achievements of more than 12 million customers."

> (b)  "Navient services loans for more than 12 million … customers, including 6.3 million customers whose accounts are serviced under Navient [Corporation]'s contract with ED. We help our customers navigate the path to financial success through proactive outreach and emphasis on identifying the payment plan that best fits their individual budgets and financial goals."

> (c)  "The Navient board of directors and its standing committees oversee our strategic direction, including setting our risk management philosophy, tolerance and parameters; and establishing procedures for assessing the risks our businesses face as well as the risk management practices our management team develops and implements."

15.     Navient owns or leases the offices used by NSI; has responsibility for the hiring of employees for NSI; and manages all compliance auditing for NSI.

16.     Navient consented to, has knowledge of, has materially participated in, and/or has controlled the activities of NSI with respect to the conduct alleged in this Complaint.

17.      Navient is liable for the wrongful acts of its subsidiary-agents.

18.     The acts of the Defendants were conducted in concert pursuant to an express or implied agreement amongst themselves to act in this collective manner. All Defendants are therefore jointly and severally liable for the acts complained of herein.

### **General Allegations**

19.     In 2001, Plaintiff Thompson applied for graduate school loans with SLM Corporation a/k/a Sallie Mae for the purpose of attending law school.

20.     Sallie Mae identified these student loans as Account #: 9425178858-1 ("Loans").

21.    Plaintiff Thompson satisfied these Loans in full in 2010 and 2011, thereby extinguishing any corresponding promissory notes, and the accounts were closed.

22.    All final payments on each of the Loans were made by check and liquidated by Sallie Mae in 2010 and 2011.  (Copies of the checks as proof of payment and liquidation by Sallie Mae are attached as **Comp. Exh. 1**).

23.    As recent as August 2016, Plaintiff Thompson's credit reports reflected the satisfaction of these Loans and the closure of the accounts, i.e. "Activity Description – Paid and Closed".  (A copy of the pertinent portion of Thompson's credit report is attached as **Exh. 2**).

24.    However, on August 11, 2016 and again on August 12, 2016, Navient issued two default letters to Plaintiff Malkemus, a co-applicant of one of the Loans, referencing the identical Sallie Mae Account numbers of the two Loans, which were satisfied in 2010 and 2011 ("Navient Default Letters").  (Copies of the Navient Default Letters are attached as **Comp. Exh. 3**).

25.    No default letters have ever been issued to Plaintiff Thompson.

26.    The Navient Default Letters do not give any indication as to when, why, or how any alleged loan with Navient is in default.  Plaintiff Malkemus does not now nor has he ever received a loan from Navient or its predecessors-in-interest.

27.    As of August 23, 2016, Plaintiff Thompson's credit reports still reflected the Sallie Mae Loans as "Paid and Closed," and neither Plaintiffs' credit reports have ever listed "Navient" as a creditor.

28.    Presuming that the Navient Default Letters were a mistake, on August 22, 2016, Plaintiff Thompson telephoned Navient to inform Navient of their mistake.

29.    The Navient representative first explained to Plaintiff Thompson that the Loans had been in a courtesy forbearance for six (6) years.  Plaintiff Thompson refuted the remark and

explained how on February 18, 2016, when Thompson had a conversation with Sallie Mae on another matter, Sallie Mae confirmed verbally the Loans were paid off in full and closed.

30.     Back on February 18, 2016, Sallie Mae further explained how "all Sallie Mae loans predating 2014 became part of Navient's portfolio when Navient split from Sallie Mae."

31.     The Navient representative put Thompson on hold to speak with her supervisor. When the Navient representative returned, she reported that her supervisor said, "there is a balance of about $55,000; that there is an ongoing lawsuit; and that Thompson should get in touch with the Trustee or attorney on the case." Navient refused to speak further with Plaintiff Thompson.

32.     After concluding the Navient call, on the same day, August 22, 2016, Plaintiff Thompson sent correspondence to Navient's local counsel in Miami, Florida, asking for the basis of the Navient Default Letters. Navient's local counsel responded, "I have no idea what this is about. I will check." (A copy of the correspondence is attached as **Exh. 4**). To date, Navient's local counsel has remained silent on the matter.

33.     Since Navient's corporate headquarters refused to speak with Plaintiff Thompson and Navient's local counsel was without knowledge, Thompson reported Navient's conduct to the Attorney General of Florida on August 23, 2016. (A copy of the correspondence to the Attorney General of Florida is attached hereto as **Exh. 5**[1]). Plaintiff Malkemus sent a copy of said correspondence to the Attorney General of Colorado.

34.     As of August 23, 2016, Plaintiff Malkemus issued correspondence directly to Navient disputing Navient's false claims. (A copy of Malkemus' correspondence to Navient is attached hereto as **Exh. 6**[2]).

---

[1] The exhibits to the letter are excluded because they are repetitive of other exhibits enclosed herein.
[2] Likewise, the exhibits to the letter are excluded because they are repetitive of other exhibits enclosed herein.

THOMPSON PLLC

35.     An investigation specialist from the Attorney General of Florida's office directed Navient to provide a response to Thompson's complaint, which Navient did on October 20, 2016 ("Navient's 10/20/16 Response").  (A copy of Navient's 10/20/16 Response is attached hereto as **Comp. Exh. 7**).

36.     In Navient's October 20, 2016 Response, received by Plaintiff Thompson on October 29, 2016, Navient for the first time claimed that due to a settlement in an unrelated federal bankruptcy case, Navient "reinstated Thompson's account."  Navient did not provide an explanation for any legal basis permitting a "reinstatement" of a satisfied and extinguished note, nor did Navient provide a copy of any documents that give rise to any claim against Plaintiffs.

37.     The Navient 10/20/16 Response is replete with inconsistencies.  For instance, Navient claims that the settlement amount from the bankruptcy case for $45,000 was being "credited" back to Thompson's account, but "$42,066.30 is owed" and "$11,271.98 in interest is being waived."  Mathematically, these figures are incompatible and it is illogical that interest could accrue on an extinguished loan.

38.     Plaintiffs never had any relationship with Navient, contractual or otherwise, and therefore, Plaintiffs' credit reports never referenced Navient from 2001 through September 2016.

39.     By September 19, 2016, Navient filed a claim on both of Plaintiffs' credit reports.

40.     Plaintiff Thompson's credit reports now indicate four (4) outstanding "Student Loans" with Navient for a total balance of $138,619.00 and lists all four (4) statuses as "deferred pay start date 08/2019."

41.     Plaintiff Malkemus' credit reports now indicate four (4) accounts with Navient; three (3) accounts with a $0 balance and a fourth account with a balance of $26,720, and all four

(4) statuses as "deferred payments begin Aug 2019." (See pertinent portions of Plaintiffs' credit reports attached as **Comp. Exh. 8**).

42.     Navient's position as stated to the Attorney General's office of Florida is inconsistent with its direct reports to Plaintiffs' credit agencies. For instance, Navient reports to the Attorney General of Florida that approximately $42,066.30 is now owed on the student loans by both Plaintiffs, but reports to the credit agencies that Malkemus owes $26,720.00, and Thompson owes $138,619.00. Navient reports to the Attorney General of Florida that it is "crediting" a closed account as a result of a settlement, but reports to the credit agencies that the alleged Loans were "deferred."

43.     As of November 3, 2016, both Plaintiffs disputed Navient's claims in writing to the credit reporting agencies.

44.     On November 6, 2016, Experian posted the result of Malkemus' dispute with Navient as accurately confirmed, and on November 7, 2016, in a telephone call, Experian told Malkemus that a Navient account ending in #92303 has been paid, closed, and never late, but that Malkemus owes $20,271.00, on a Navient account ending in #82802.

45.     On November 9, 2016, both Plaintiffs issued letters to Experian to provide copies of any proof submitted by Navient to make or confirm their false claims. (A copy of the correspondence to Experian is attached hereto as **Comp. Exh. 9a**).

46.     To date, Experian has failed to produce any evidence as to how Navient authenticated its claims on Plaintiffs' credit reports.

47.     In another telephone call with Experian on or about December 21, 2016, Experian informed Plaintiff Malkemus that it does not seek evidence of an alleged debt, it only requires a verbal confirmation from a creditor to maintain the alleged debt on the credit reports.

48.     On October 27, 2016, Plaintiff Thompson invited Navient's local counsel to assist in a resolution of the matter to no avail.  (A copy of the correspondence to Navient's local counsel is attached hereto as **Exh. 9b**).

49.     Likewise, Plaintiff Thompson issued correspondence directly to Navient on November 2, 2016, requesting a copy of any and all documents pertinent to its alleged claims, along with an explanation for the legal basis of its assertions ("Thompson's 11/2/16 Letter").  (A copy of Thompson's 11/2/16 Letter is attached hereto as **Exh. 10a**).

50.     After speaking again with a Navient representative, Navient directed Plaintiff Thompson to access the referenced Loans online.  Navient's online system documents the history of the Loans as paid in full, but adds two line items as "payment reversals" dated July 13, 2010, and August 5, 2010.  (A copy of Navient's online account history is attached as **Exh. 10b**).

51.     The online Navient account history further claims that Plaintiff Malkemus is a co-signer on one of the Loans, and the outstanding amount owed on that account is $20,277.69.

52.     In the same call, Navient promised to produce all documents evidencing Navient's claims by November 18, 2016, including an alleged 'master promissory note.'

53.     However, on November 18, 2016, Navient's representative failed to produce any documents and responded with a letter to Thompson stating, "we are in the process of researching your account" ("Navient's 11/18/16 Letter").  (Navient's 11/18/16 Letter is attached hereto as **Exh. 11**).  Navient allegedly had been "researching" these accounts or these Loans for over three (3) months.

54.     On November 22, 2016, Thompson received additional correspondence from Navient claiming that all documents encompassing the file were enclosed ("Navient's 11/22/16 Letter").  (A copy of Navient's 11/22/16 Letter is attached as **Exh. 12** [w/o enclosures]).  The

two hundred and fourteen (214) documents produced by Navient in Navient's 11/22/16 Letter included three categories of documents:   (i) one hundred and forty-three (143) pages of redundant copies of *Exhibit 5 supra*, (ii) twenty-eight (28) pages of attorney invoices from the unrelated federal bankruptcy case, and (iii) forty-three (43) pages of Navient correspondence allegedly issued to Thompson or Malkemus[3].

55.     With respect to the forty-three (43) pages of Navient correspondence enclosed in Navient's 11/22/16 Letter, the following outlines the dates and amounts set forth in each letter:

  a.   Letters allegedly sent to Plainitff Malkemus:

| Bates No. | Dated | Amount allegedly owed |
|---|---|---|
| Nav17-Nav21 | 10/23/16 | $20,254.40 |
| Nav30-Nav31 | 8/11/16 | $22,186.97 |
| Nav32 | 8/11/16 | $27,581.33 |
| Nav38-Nav42 | 8/12/16 | $23,040.25 |

  b.   Letters allegedly sent to Plaintiff Thompson:

| Bates No. | Dated | Amount allegedly owed |
|---|---|---|
| Nav2-Nav3 | 9/30/16 | $44,102.75 |
| Nav4-Nav9 | 10/10/16 | Paid in Full |
| Nav10-Nav11 | 10/20/16 | $42,082.42 |
| Nav12-Nav16 | 10/23/16 | $42,082.42 |
| Nav22- Nav24 | 10/25/16 | $42,082.42 |
| Nav25 | 8/11/16 | $51,869.47 |
| Nav26- Nav29 | 8/11/16 | $42,262.78 |
| Nav33- Nav37 | 8/12/16 | $43,330.84 |
| Nav43- Nav44 | 9/1/16 | $44,102.75 |

56.     In Navient's 11/22/16 Letter, no promissory note was produced; no document executed by either Plaintiff was produced; and no explanation for the basis of Navient's claim on the Loans was produced.

---

[3] Neither Thompson nor Malkemus received most or all of this correspondence.

THOMPSON PLLC

57.     On December 7, 2016, Thompson received correspondence from Navient's representative, Nedra Philip explaining, "we have provided you copies of your Promissory Notes for the loans that were reinstated in August 2016.  You agreed to the terms of the loans when you signed the Promissory Notes" ("Navient's 12/7/16 Letter").  (A copy of Navient's 12/7/16 Letter is attached hereto as **Exh. 13**).

58.     In Navient's 12/7/16 Letter, Navient produced two generic, form promissory notes ("Notes").  These Notes are unsigned; include no borrower or lender names; and exclude any reference to dates, interest rates, or monetary amounts.

59.     The only signed documents enclosed in Navient's 12/7/16 Letter were two applications for a loan with Nellie Mae; one executed by Thompson on October 1, 2001; and the other executed by Plaintiff Malkemus and Plaintiff Thompson, respectively on February 30, 2002 and July 1, 2002 ("Applications").

60.     The Applications expressly state "this notice is not the contract that makes you liable for the debt."  *See Exh. 13 supra*.

61.     Both Plaintiffs currently receive regular correspondence from Navient claiming that monthly payments are due and past due.

62.     On December 13, 2016, Navient issued a letter to Plaintiff Malkemus claiming that Plaintiff Malkemus owed Navient $20,358.40.  (A copy of Navient's 12/13/16 Letter is attached hereto as **Exh. 14**).

63.     On January 11, 2017, Navient issued correspondence to Plaintiff Thompson enclosing a 1098-E as reported to the Internal Revenue Service, stating, "$1,250.43 of student loan interest was received by Navient in 2016" (Navient's 1/11/17 Letter").  (A copy of Navient's 1/11/17 Letter is attached hereto as **Exh. 15**).  This 1098-E is a fabrication; since the

Loans were paid off in 2010 and 2011, Plaintiffs have made no payments to Sallie Mae or its successors in interest.

64.     As of January 24, 2017, Navient's online system reflects an alleged balance owed to Navient for $42,474.07, all of which is allegedly owed by Plaintiff Thompson, and $20,358.40 of which is allegedly owed by Plaintiff Malkemus.

65.     Navient calls into question its own business practices by the very assertion that it assumed Loans in 2014, which by its own admission, were extinguished in 2010 and 2011.

66.     Navient's written communications continue to contradict various of its other written communications, whether it is the characterization of the Loans as a "settlement credit" versus a "deferred payment" or the amounts owed, ranging from "$42,066.30 to $26,720.00 to $138,619.00."

67.     For half a year now Plaintiffs have attempted diligently to pursue a clarification and resolution of these extinguished Loans based on reasonable inquiry.

68.     Navient continues to assert that it was entitled to reinstate the Loans on the basis of its voluntary settlement to an unrelated party in a federal bankruptcy case.

**<u>Demand to Navient</u>**

69.     On December 30, 2016, Plaintiffs issued a certified demand letter to Navient pursuant to the civil theft statute, §772.11, *Fla. Stat.*  (A copy of the Demand letter is attached hereto as **<u>Exh. 16</u>**).

70.     The deadline for Navient to withdraw its claims has come and gone, and Navient has failed to withdraw its claims.

71.     Rather on January 26, 2017, Navient responded to Plaintiff Thompson that its claims on the Loans were valid ("Navient's 1/26/17 Letter").  (A copy of Navient's 1/26/17 Letter is attached hereto as **Exh. 17**).

### **Federal Complaints against Navient**

72.     Currently, the Attorney General of Illinois, along with the Consumer Financial Protection Bureau (CFPB) have filed lawsuits against Navient on or about January 18, 2017, for deceptive and unfair trade practices, consumer fraud, and other causes of action.

73.     Similarly on January 20, 2017, a class action was filed against Navient in the Southern District of Florida for violation of the Fair Debt Collection Practices Act (FDCPA), citing the CFPB's specified, illegal practices.

74.     As a result of Navient's conduct, Plaintiffs have been forced to retain counsel for whom they have agreed to pay a reasonable fee.

75.     All conditions precedent to this action have been excused, performed, waived, or have occurred.

### **COUNT I**
### **(Violation of the Fair Credit Reporting Act)**

76.     Plaintiffs repeat and re-allege paragraphs 1-75 above as if said paragraphs were fully set forth herein at length.

77.     This is a claim for violation of the Fair Credit Reporting Act, 15 USC §1681(n) ("FCRA").

78.     Defendants wilfully failed to comply with the requirements imposed under the FCRA.

79.     Specifically, Defendants had a duty (a) to report accurate information to the credit reporting agencies; (b) to correct and update information to the credit reporting agencies upon

THOMPSON PLLC

notice of errors in the reporting; (c) not to furnish information to the credit reporting agencies that they knew or had reasonable cause to believe was inaccurate; (d) not to furnish information to the credit reporting agencies that is inaccurate after they were notified by Plaintiffs of the inaccuracies; and (e) a duty to complete the investigation of the disputed report within thirty days of the dispute.

80.     Defendants breached their duties under the FCRA.

81.     Plaintiffs have suffered damages as a result of Defendants willful conduct.

WHEREFORE Plaintiffs respectfully request this Court enter judgment against the Defendants for: (a) actual damages according to the statutory amount; (b) punitive damages; (c) attorneys' fees and costs; (d) declaratory judgment that Defendants willfully violated the FCRA; and (e) any other relief the Court deems just and proper.

## COUNT II
### (Violation of the Fair Credit Reporting Act)

82.     Plaintiffs repeat and re-allege paragraphs 1-75 above as if said paragraphs were fully set forth herein at length.

83.     This is a claim for violation of the Fair Credit Reporting Act, 15 USC §1681(o) ("FCRA").

84.     Defendants negligently failed to comply with the requirements imposed under the FCRA.

85.     Specifically, Defendants had a duty (a) to report accurate information to the credit reporting agencies; (b) to correct and update information to the credit reporting agencies upon notice of errors in the reporting; (c) not to furnish information to the credit reporting agencies that they knew or had reasonable cause to believe was inaccurate; (d) not to furnish information to the credit reporting agencies that is inaccurate after they were notified by Plaintiffs of the

inaccuracies; and (e) a duty to complete the investigation of the disputed report within thirty days of the dispute.

86.     Defendants breached their duties under the FCRA.

87.     Plaintiffs have suffered damages as a result of Defendants' negligent conduct.

WHEREFORE Plaintiffs respectfully request this Court enter judgment against the Defendants for: (a) actual damages; (b) attorneys' fees and costs; (c) declaratory judgment that Defendants negligently violated the FCRA; and (d) any other relief the Court deems just and proper.

## COUNT III
### (Violation of the Florida Deceptive and Unfair Trade Practices Act)

88.     Plaintiffs repeat and re-allege paragraphs 1-75 above as if said paragraphs were fully set forth herein at length.

89.     This is a claim for violations of Florida's Deceptive and Unfair Trade Practices Act "FDUPTA"), Fla. Stat. §501.201 – §501.213.

90.     Defendants' services are "trade or commerce" as defined by FDUPTA.

91.     According to Fla. Stat. §§501.204(1), "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

92.     Defendants engaged in numerous unfair acts and practices in the handling of Plaintiff Thompson's extinguished Loans, including but not limited to, intending to use deception, fraud, false pretenses, false promises, and misrepresentation in the varied amounts allegedly owed, such that Plaintiffs will rely on such confirmation and will thereby be misled as to the basis of Defendants' claims of reinstatement of the loans.

93.     Defendants' practices, as set forth above, were unfair in that:

a.  The practices were immoral, oppressive, and unscrupulous in that they imposed upon Plaintiffs with no meaningful choice, imposed an unreasonable burden on Plaintiffs to file suit, and were so oppressive as to leave Plaintiffs with little alternative but to submit to Defendants' false claims;

b.  Plaintiffs have no control over the Defendants' acts; and

c.  Plaintiffs cannot reasonably avoid the injury caused by Defendants, as Defendants are in ultimate control of the handling of Plaintiff Thompson's extinguished Loans.

94.    Defendants' unfair practices are directed towards Plaintiffs.

95.    Defendants' intended for Plaintiffs to rely on their acts and practices in handling the extinguished Loans as correct, even though Defendants have no basis for their claims against Plaintiffs.

96.    Defendants also intended for Plaintiffs to rely on their billing statements, emails, and online website reports as correct, even though the variegated statements are incorrect, confusing, and intentionally misleading.

97.    Defendants' unfair and deceptive practices occurred during the course of conduct involving trade or commerce, specifically the attempted collection of Thompson's extinguished student Loans.

98.    Defendants are attempting to collect a debt on the Loans in the State of Florida.

99.    Plaintiffs have suffered damages as a result of Defendants' false reporting of the extinguished Loans, and false and misleading collection efforts on extinguished Loans.

100.    Plainitffs' damages are directly and proximately caused by Defendants' unfair acts and practices.

101.    Defendants' conduct implicates consumer protection concerns and, therefore, a consumer nexus exists in that: (i) Defendants' acts and practices in handling student Loans, falsely reporting extinguished Loans, falsely reporting loan payments to the IRS, and

misrepresenting that payments were collected; and, (ii) Defendants' acts and practices otherwise implicate consumer protection concerns including, but not limited to, promoting fair and upright business practices.

102.    Plaintiffs are authorized to bring a private action under FDUPTA.

103.    Defendants' conduct was willful and intentional and done with malice or reckless indifference to the rights of Plaintiffs.  Punitive damages are thus warranted.

104.    As a direct and proximate result of Defendants' unfair and deceptive acts, Plaintiffs have suffered damages.

WHEREFORE Plaintiffs respectfully request this Court enter judgment against the Defendants for: (a) actual and compensatory damages; (b) punitive damages; (c) consequential damages; (d) prejudgment and post-judgment interest; (d) attorneys' fees and costs; (e) declaratory judgment that Defendants' acts, omissions, and practices violate FDUPTA; (f) injunctive relief from further violations; and (g) any other relief the Court deems just and proper.

**COUNT IV**
**(Declaratory Action – Wrongful Reinstatement of the Notes)**

105.    Plaintiffs repeat and re-allege paragraphs 1-75 above as if said paragraphs were fully set forth herein at length.

106.    This is a claim for declaratory relief under Chapter 86 of the Florida Statutes, and other applicable law, to determine Navient's power, privileges, or rights with respect to the Loans at issue.

107.    Specifically, Navient is not entitled to reinstate the two satisfied Loans.

108.    Navient asserts it is owed a debt by Plaintiff Thompson.

109.    Navient asserts it is owed a debt by Plaintiff Malkemus.

110.    Navient voluntarily paid a settlement in an unrelated federal bankruptcy case, and thereafter without notice to Plaintiffs, unilaterally reinstated two of Thompson's closed Loans.

111.    Navient arbitrarily chose two Loans to reinstate.

112.    Plaintiffs did not consent to the reinstatement of the Loans.

113.    Navient has no legal basis to reinstate the satisfied and extinguished Loans.

114.    The Notes relied upon by Navient do not permit reinstatement.

115.    The Notes relied upon by Navient are not enforceable.

116.    Plaintiffs dispute the validity of the Notes produced by Navient.

117.    Plaintiffs dispute that they owe any amounts to Navient.

118.    There is an actual controversy amongst the parties regarding the reinstatement of the Notes.

119.    This is an actual controversy amongst the parties regarding the power, privileges, or rights of Navient with respect to the Loans claimed against Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court grant judgment against Navient: (a) determining Navient's power, privileges, or rights with respect to the Notes, (b) determining Navient's power, privileges, or rights with respect to the Loans, (c) awarding Plaintiffs their attorneys' fees and costs, and (d) granting any such other and further relief as it deems appropriate.

## COUNT V
### (Declaratory Action – Enforceability of the Notes)

120.    Plaintiffs repeat and re-allege paragraphs 1-75 above as if said paragraphs were fully set forth herein at length.

121.    This is a claim for declaratory relief under Chapter 86 of the Florida Statutes, and other applicable law, to determine Navient's power, privileges, or rights with respect to the Loans at issue.

122.    Specifically, the Notes produced by Navient that form the basis of its claims against Plaintiffs are not enforceable.

123.    Even if Navient permissibly reinstated the Loans at issue, the Notes that form the basis of Navient's claims are not enforceable.

124.    Navient asserts it is owed a debt by Plaintiff Thompson.

125.    Navient asserts it is owed a debt by Plaintiff Malkemus.

126.    Plaintiff Thompson did not execute the Notes.

127.    Plaintiff Malkemus did not execute the Notes.

128.    Neither Navient nor any of its predecessors executed the Notes.

129.    The Notes exclude any details as to the date or terms of any alleged Loan; a name of a borrower; a name of a lender; the amount of any alleged Loan; or the due date for a payoff on any alleged Loan.

130.    Plaintiff Malkemus received no consideration for the Loans.

131.    Plaintiffs did not consent to the reinstatement of the Loans or the Notes.

132.    The Notes relied upon by Navient are not enforceable.

133.    The statute of frauds bars Navient's claims on the Loans and/or the Notes.

134.    The statute of limitations bars Navient's claims on the Loans and/or the Notes.

135.    No contract was ever formed between Plaintiff Malkemus and Navient or any of its predecessors-in-interest for lack of consideration.

136.    Plaintiffs dispute the enforceability of the Notes.

THOMPSON PLLC

137.    Plaintiffs dispute that they owe any amounts to Navient or their predecessors-in-interest.

138.    There is an actual controversy amongst the parties regarding the enforceability of the Notes.

139.    This is an actual controversy amongst the parties regarding the power, privileges, or rights of Navient with respect to the Loans claimed against Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court grant judgment against Navient: (a) determining Navient's power, privileges, or rights with respect to the Notes, (b) determining Navient's power, privileges, or rights with respect to the Loans, (c) awarding Plaintiffs' their attorneys' fees and costs, and (d) granting any such other and further relief as it deems appropriate.

## COUNT VI
## (Fraud)

140.    Plaintiffs repeat and re-allege paragraphs 1-75 above as if said paragraphs were fully set forth herein at length.

141.    This is a claim for fraud.

142.    Defendants' misrepresented a material fact when it reported to Plaintiffs that its Loans were satisfied, extinguished, and closed at all material times from 2010 through August 2016.

143.    Plaintiffs relied on Defendants' material misrepresentations when completing the Applications for Thompson's Loans and among other things, when the Loans were paid off in full, satisfied, and any corresponding notes thereby extinguished.

144.    Plaintiffs have suffered damages among other reasons, as a result of Defendants' wrongful reinstatement of the Notes; the wrongful reopening of the Loans; the wrongful

reporting to the credit reporting agencies; and the wrongful pursuit of collection efforts against Plaintiffs.

WHEREFORE Plaintiffs respectfully request this Court enter judgment against the Defendants for: (a) actual and compensatory damages; (b) punitive damages; (c) consequential damages; (d) prejudgment and post-judgment interest; (d) attorneys' fees and costs; and (e) any other relief the Court deems just and proper.

## COUNT VII
## (Civil Theft)

145.    Plaintiffs repeat and re-allege paragraphs 1-75 above as if said paragraphs were fully set forth herein at length.

146.    This is an action for civil theft pursuant to Fla. Stat. §772.11.

147.    Plaintiff Thompson paid off her student Loans with Defendants' predecessors-in-interest in full in 2010 and 2011 respectively.

148.    Defendants unlawfully and knowingly reinstated Plaintiff Thompson's student Loans; reported false and inaccurate information regarding the reinstated Loans to the credit reporting agencies; and pursued collection efforts against Plaintiffs on the unlawfully reinstated Loans.

149.    In violation of Fla. Stat. §812.0141, Defendants knowingly obtained or used or endeavored to obtain or use, Plaintiffs' property with the intent to, either temporarily or permanently deprive the Plaintiffs of a right to the property or a benefit from the property.

150.    Defendants knowingly obtained or used or endeavored to obtain or use, the property of Plaintiffs with the intent to, either temporarily or permanently appropriate the property to its own use or to the use of any person not entitled to the use of Plaintiffs' property.

151.    Pursuant to Fla. Stat. §772.11, Plaintiffs made a written statutory demand to Defendants for their property on December 30, 2016.

152.    To date, and despite the demand by Plaintiffs, Defendants have failed to cease their efforts to temporarily or permanently deprive Plaintiffs of their property and/or appropriate Plaintiffs' property.

153.    As a direct and proximate cause of Defendants' unlawful actions, Plaintiffs have been and continue to be deprived of their property and the benefit therefrom, and have suffered damages in the minimum amount of $138,619.00.

154.    Pursuant to Fla. Stat. §772.11, Plaintiffs are entitled to treble damages in the minimum amount of $415,857.00, for the theft of their property.

155.    As a direct result of Defendants depriving Plaintiffs of their right to possess and enjoy their money and benefit therefrom, and Defendants' continuing failure and refusal to return Plaintiffs' property, Plaintiffs were required to retain counsel and are obligated to pay counsel a reasonable fee.

156.    Plaintiffs are entitled to an award of attorneys' fees pursuant to Fla. Stat. §772.11.

WHEREFORE Plaintiffs respectfully request this Court enter judgment against the Defendants for: (a) actual and compensatory damages; (b) treble damages pursuant to statute; (c) consequential damages; (d) prejudgment and post-judgment interest; (d) attorneys' fees and costs; and (e) any other relief the Court deems just and proper.

## Demand for Jury Trial

Plaintiffs respectfully request that this matter be tried before a jury on all issues so triable.

Dated:  Palm Beach, Florida
        February 7, 2017

                              Respectfully submitted,

                         By:    /s Cherish A. Thompson
                                Florida Bar No. 0816221
                                THOMPSON PLLC
                                Cherish A. Thompson, Esq.
                                214 Brazilian Ave., Suite 200
                                Palm Beach, Florida 33480
                                Telephone: 305.494.3400
                                Facsimile: 305.503.8868
                                eservice@tafirm.com
                                cherish@tafirm.com
                                *Attorneys for Plaintiffs*